491 P.2d 489

**Carlos G. ROBLES, in his sole and separate right, Appellant,**

v.

**CITY OF TUCSON, a municipal corporation, Appellee.**

No. 2 CA–CIV 941.

Court of Appeals of Arizona, Division 2.

Dec. 9, 1971.

Rehearing Denied Jan. 18, 1972.

Review Denied Feb. 22, 1972.

Stubbs & Stephens, P. C. by Robert C. Stubbs, Tucson, for appellant.

Herbert E. Williams, City Atty., by J. Mercer Johnson, Sp. Counsel, Tucson, for appellee.

HATHAWAY, Judge.

Appellant owned two properties situated in the urban renewal area in the City of Tucson. Both properties were acquired through condemnation by the city in March 1968, for City Urban Renewal Project R–8. A previous urban renewal project, Project R–6, had been abandoned.

At the conclusion of the trial, the jury brought in a verdict valuing the north

property at $3.00 per square foot and the south parcel at $1.50 per square foot.[1] Judgment was entered, a motion for new trial was made by appellant and was denied, and this appeal was filed.

Five questions are presented for review. The first, a multi-faceted question, centers on the admission of alleged comparable sales by the city taken from R–6 and R–8 areas, it being appellant's position that comparable sales may not be used which have been depressed in price by the very project which required condemnation.

Appellant relies upon the general rule that property owners are not entitled to enhancement in their property value occasioned by the construction or in anticipation of the construction of the proposed project, 4 Nichols' The Law of Eminent Domain § 12.3151 (3rd ed. rev. J. Sackman 1971) and the converse, that consideration should not be given to the effect of the taking in depressing the value. State v. Hollis, 93 Ariz. 200, 379 P.2d 750 (1963); Uvodich v. Arizona Board of Regents, 9 Ariz.App. 400, 453 P.2d 229 (1969); 4 Nichols' The Law of Eminent Domain § 12.3151 (3rd ed. rev. J. Sackman 1971). Further, comparable sales that have been substantially enhanced or depressed in value because of the contemplated improvements are generally not admissible in evidence. City of Chicago v. Blanton, 15 Ill.2d 198, 154 N.E.2d 242 (1958); State Highway Commission v. Callahan, 242 Or. 551, 410 P.2d 818 (1966); State By Kobayashi v. Heirs of Kapahi, 48 Haw. 101, 395 P.2d 932 (1964); Socony Vacuum Oil Company v. State, 170 N.W. 2d 378 (Iowa 1969); 5 Nichols' The Law of Eminent Domain § 21.31 [2] (3rd ed. rev. J. Sackman 1969).

Appellant contends that the court erred in allowing the city to use comparable sales in the R–6 and R–8 areas in cross-examination of appellant's expert witness and as the basis for evaluation by their expert. Appellant sets forth the following testimony elicited from the city's appraiser, Mr. San-ders K. Solot, as showing that he had considered comparable sales which had been depressed by the urban renewal project:

"Q Did you, in valuing the subject property, give impact to adverse effects upon the subject property brought about by publicity and actions of the City of Tucson concerning these urban renewal projects?

A Certainly, my sales reflected all these things, good things and bad things. They aided me in my opinion, they are comparable sales."

Mr. Solot testified he did, in fact, use some sales in the R–6 and R–8 areas. He further testified, however, that the urban renewal area was a slum area *prior* to any announcement of the proposed projects; that in his opinion land values in the area were not depressed because of the announcement; and, that even if there had been no urban renewal, values in the area would have been just as depressed because of the blighted condition of the neighborhood. He pointed out other downtown areas which were blighted and depressed in value even though they were never included in the urban renewal area.

Appellant's expert, Mrs. Ruth Oaks, testified that she did not use sales in the R–6 and R–8 areas as comparables because, in her opinion, these sales had been substantially depressed in value because of the contemplated urban renewal projects. The rule in Arizona is that property cannot be charged with a lesser value at the time of taking when the decrease in value is occasioned by reason of the taking itself. State v. Hollis, supra; Uvodich v. Arizona Board of Regents, supra. The goal is to assure the property owner of just compensation as contemplated by the Arizona Constitution. See Ariz.Const. art. 2, § 17, A.R.S.

We are faced with a conflict of expert opinion as to whether the "comparable sales" were in fact depressed by the proposed projects. Appellant urges this court

---

1. The respective appraised values (per square foot) were: Mrs. Oaks, $9.00 and $5.00; Mr. Solot, $1.00 and $ .45; Mr. Laidlaw, $1.50 and $ .50.

to hold as a matter of law there is a conclusive presumption that sales in an urban renewal area are depressed by the proposed project and hence, inadmissible. We refuse to indulge in such a presumption. Whether the sales were affected or not was a question to be decided by the jury upon proper instructions from the court. Merced Irrigation District v. Woolstenhulme, 4 Cal. 3d 478, 93 Cal.Rptr. 833, 483 P.2d 1 (1971); and County of San Luis Obispo v. Bailey, 4 Cal.3d 518, 93 Cal.Rptr. 859, 483 P.2d 27 (1971), where evidence was given of sales that may have been affected by a project, but the jury was instructed to disregard such effect. The trial court in the instant case did instruct the jury to disregard any impact whatsoever the urban renewal activities had or might have had. Therefore, we find no error.

■ The appellant next complains that the city was permitted, over objection, to introduce six alleged comparable sales that were zoned residential in contrast to the subject properties which were zoned business. It is contended that if the subject properties had been zoned residential, the city would not have been permitted to introduce evidence that the value of the properties would be influenced by the possibility of a change to business zoning, unless, as of the date of the taking, there was a reasonable probability of a change in the zoning ordinance in the near future. State ex rel. Morrison v. McMinn, 88 Ariz. 261, 355 P.2d 900 (1960). If such "a reasonable probability" of rezoning had been shown, then the city should have been permitted to use comparable sales of business zoned property as an indication of value of the subject property.

Conversely, contends the appellant, it was an abuse of the court's discretion to permit the city to introduce evidence of residentially zoned properties where the subject properties are zoned business, unless the city showed a "reasonable probability" that such other residentially zoned properties could have been rezoned for business in the near future and that the purchasers gave a business value to the residentially zoned

properties. And, since the city offered no such preliminary evidence, the court should have excluded from the jury's consideration other residentially zoned properties.

The city responds that an appraisal which fails to consider the highest and best use would not assist to determine the fair market value. State ex rel. Morrison v. Jay Six Cattle Company, 88 Ariz. 97, 353 P.2d 185 (1960); County of Maricopa v. Paysnoe, 83 Ariz. 236, 319 P.2d 995 (1957). It points out the following language in Moschetti v. City of Tucson, 9 Ariz.App. 108, 112–113, 449 P.2d 945, 949 (1969):

> "One primary objective in a condemnation proceeding is to bring the values of the real-world market-place into the courtroom."

The city contends that the real world market value in the instant case concerns highest and best use. The city's appraisers testified that the highest and best use of the Robles properties was multi-residential. Therefore, Mr. Solot testified that in his opinion sales of multi-residentially zoned property served as a proper basis for his opinion of value of the subject property. Multi-residential use is one of the permitted uses in business zoning.

> "Evidence which has a material bearing on market value should be admissible, without regard to whether it relates to an eventuality that might or might not occur in the 'near' or more 'distant' future, as long as the prospect of the event has substantial present influence on market value." Moschetti v. City of Tucson, 9 Ariz.App. at 113, 449 P.2d at 950.

The trial court is vested with broad discretion in the admission of evidence of this type. As stated in Department of Highways v. Schulhoff, 167 Colo. 72, 445 P.2d 402, 406 (1968):

> "Whether the properties are sufficiently similar to be of aid to the jury in fixing the value of the property condemned necessarily rests largely in the sound discretion of the trial court which will not be interfered with unless abused."

We are of the opinion that the comparable sales were sufficiently similar to aid in the fixing of value and find that the trial court did not abuse its discretion in allowing their admission. The difference in the zoning goes to the weight and not to the competency of the evidence.

■ Appellant next contends that the court erred by admitting sales adversely affected by the urban renewal projects, without a preliminary determination on the part of the trial judge to establish whether said sales were affected adversely. The city cross-examined the property owners with regard to said sales. Appellant's counsel objected at this point on the basis that his appraiser had testified that the sales were depressed by the threat of condemnation and were thus inadmissible as a matter of law. The following colloquy between court and counsel helps set the background of the problem:

"MR. STUBBS: Excuse me, your Honor, I'm going to object to any cross examination concerning the sale for the very obvious reason that the property has been subject to further eminent domain since 1957 and I think it's immaterial and irrelevant. As you can see, it's in the area not only of the older renewal but the newer renewal project likewise.

THE COURT: Counsel, I think the lid as you referred to and adduced testimony concerning which the existence of it or the effect of it, would be a jury question, so Counsel will be permitted to offer evidence on the other side of that issue. Objection overruled.

MR. STUBBS: Excuse me, my understanding that this evidence is going in to show that the publicity did not have an impact upon market value in the area, solely?

THE COURT: The determination couldn't be made as to the effect of the impact unless you had evidence of what sales were after the publicity, if any. The reason for my ruling is to permit evidence on the other side of the issue both as to whether or not the impact occurred and to what extent, if any, it did affect market values.

\* \* \* \* \* \*

MR. JOHNSON: If the Court please, there is Arizona Authority on it, if the Court wants to see it ahead of time, that I have a right to cross-examine Mrs. Oaks or any appraiser that appears and gives appraisal testimony as to sales that happened in the area where they have investigated and whether or not they should have taken them into consideration and that's the purpose of these questions.

THE COURT: I'm going to permit cross-examination with the understanding that there will be direct evidence offered by the City of Tucson that these sales occurred whether or not they are comparable or whether or not they meet all the requirements of comparability, is a jury question, goes to the weight."

5 Nichols' The Law of Eminent Domain § 21.3 [3] (3rd ed. rev. J. Sackman 1969) discloses that comparable sales may be used in the following situations:

a. As substantive evidence of value of the subject properties;

b. As foundation upon which an expert opinion is premised;

c. In cross-examination of an expert to test expertise and investigation serving as the basis for the expert's opinion.

The treatise further discloses that diminishing degrees of comparability are required for each category. See City of Tucson v. LaForge, 8 Ariz.App. 413, 446 P.2d 692 (1968), where we held, that sales serving as a factual basis upon which expert opinion was founded, could be scrutinized on cross-examination. There we observed, that if the sales were not comparable, cross-examination could bring out this factor and it could be called to the jury's attention in final argument. In such instance, comparability of these sales simply bears upon the weight to be given the expert opinion. Here, where broad latitude

is afforded in testing the appraiser's expertise, Moschetti v. City of Tucson, supra, comparability of the sales goes to the weight aspect.

■ Fourth, appellant complains that the city's witness, Donald Laidlaw, was permitted to testify as to value. Reference is made to the following portion of transcript which appellant contends shows that Mr. Laidlaw was not qualified to testify as to value.

"Q. Now Mr. Laidlaw, you are familiar, are you not, with the principle of substitution which all appraisers use?

A. I am not familiar with any specific appraisals technique. My approach is not an appraisal technique, it is evaluation, judgment based upon market.

Q. Now Mr. Laidlaw, so you use no recognized appraisal techniques in arriving at your valuation?

A. I do not use techniques in appraising in arriving at my valuation.

Q. Well, Mr. Laidlaw, let's talk about the principles of substitution. Let me suggest to you what the answer is because we can talk to you about a basis of it. The principle of substitution. . .

Mr. Johnson: Court please, I am going to object. The witness has testified he didn't use, didn't follow those approaches at all so any cross-examination would be immaterial.

Mr. Stubbs: That is precisely the point, your Honor, is that this witness didn't follow any theories.

The Court: He's admitted that."

Appellant relies on Board of Regents of University, etc. v. Cannon, 86 Ariz. 176, 179, 342 P.2d 207, 209 (1959), for the following proposition:

"If the witness testifying as to market value bases his opinion upon a recognized method of determining it which is of such a nature that it is not a matter of common knowledge, but results from special experience or training of the witness, his opinion in that matter may be ~regarded as expert."

Appellant argues that Laidlaw was unqualified to give an opinion as to valuation because the following background was insufficient:

"Past urban renewal director; has never testified as to property values in past; never made appraisal for anyone; does not use techniques in appraising in arriving at his valuation."

The city points up the following background which it contends is justification for the court's permitting the testimony. Mr. Laidlaw has a bachelors degree in geography from the University of Arizona and a masters degree in city planning from Yale University. He was employed by Pima County as Deputy Director of Civil Defense where he was responsible for directing, programming and budgeting the county's civil defense program. He joined the city planning department as principal planner in 1963 where he made studies and analyses of neighborhoods directed toward devising programs for their improvement, and for stabilizing and upgrading areas with capital improvements such as streets and utilities. In 1964, he was placed on special assignment with the city manager's office to study and analyze the need for urban renewal. He served as Urban Renewal Administrator from 1966 to 1969 at which time he became Planning Director for the City of Tucson where he served for 9 months. He testified that in connection with his work with the city, requiring inspection and studying of properties, he had a familiarity with property values in the area. In his position as planning and zoning director, which he occupied when he appeared as a witness in this case, he was in daily contact with real estate people who were seeking advice on development and rezoning. As part of his work he felt obliged to keep informed on property pricing structures in the community and obtained much information from real estate people on the matter. Many other items in the record indicate that the witness was fully qualified to assist the jury in arriving at market values. Even though he testified that he used no "appraisal tech-

niques," the following excerpts from his testimony indicate that he did possess special knowledge and experience which served to qualify his testimony:

"A I'm not relying on sales within this immediate area, I'm relying on the— what the market will bear, what price land can be sold for for specific uses and specific environments.

\* \* \* \* \* \*

Q [By Mr. Stubbs] Now Mr. Laidlaw, you are familiar, are you not, with the principle of substitution which all the appraisers use?

A I am not familiar with any specific appraisal techniques. My approach is not an appraisal technique, it is evaluation, judgment based upon market.

Q Now Mr. Laidlaw, so you used no recognized appraisal techniques in arriving at your evaluation?

A I do not use techniques of appraising in arriving at my evaluation.

I relied, Mr. Stubbs, on my evaluation of the potential usage of that property in light of what return might be generated by that property either in its present state—the before state, in 1968—or in a future state counting the cost of having to clear it and redevelop it, how much would that property bring on the market."

The competency of appraisal witnesses is for the court and will not be disturbed on appeal except for abuse. Parker v. State ex rel. Church, 89 Ariz. 124, 359 P.2d 63 (1961); State v. Jay Six Cattle Company, supra. In Board of Regents v. Cannon, supra, the court stated:

"His qualifications as an expert depend upon the possession of special knowledge which he can impart to the jury which will assist them in regard to a pertinent matter as to which the jury are presumed not to be so competent as the witness to draw the proper conclusions from the facts proved." 86 Ariz. at 178, 342 P.2d at 209.

The evidence clearly shows that the witness had wide and varied experience which he could draw upon to impart special knowledge to the jurors concerning property valuations in the area. Appellant's point is without merit.

On rebuttal, appellant sought to contradict Mr. Laidlaw's testimony with testimony from Mr. Raymond Olsen concerning the reluctance of moneylenders to provide financing on slum properties. As we have previously pointed out, the competency of a witness to testify as an expert in a particular field is a matter largely within the discretion of the trial court and will not be disturbed on appeal except for abuse. M. Udall, Arizona Law of Evidence § 23, at 42 (1960). Objection was made to Mr. Olsen's testimony on the basis that he had no familiarity with the urban renewal area or with the economics in Tucson at either the time of the valuation or at the time of trial. Mr. Olsen's total unfamiliarity with the local conditions justifies the court's refusal to permit his testimony.

The judgment is affirmed.

KRUCKER, C. J., and HOWARD, J., concur.