508 P.2d 1174

**CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Otto A. RUELAS and Mary M. Ruelas, husband and wife, Appellees.**

**No. 2 CA–CIV 1322.**

Court of Appeals of Arizona, Division 2.

April 24, 1973.

Rehearing Denied May 22, 1973.

Review Denied July 18, 1973.

Herbert E. Williams, Tucson City Atty., by J. Dan O'Neill, Asst. City Atty., Tucson, for appellant.

Stubbs & Stephens, P. C., by Robert C. Stubbs and James C. Stephens, Tucson, for appellees.

HOWARD, Judge.

In the appeal of this eminent domain action the appellant questions the failure of the trial court to grant a mistrial and its refusal to strike testimony of appellees' appraiser. The pertinent facts will be developed later in the opinion.

 The appellant claims that during jury selection and after appellant had passed the panel, four prospective jurors indicated in response to appellees' voir dire of the jury that they favored giving more than fair market value to a property owner whose land was taken under the power of eminent domain. Appellant, however, has not filed with this court a transcript of the voir dire of the jury. Our appellate review is limited to the record on appeal. Morris v. Southwest Savings and Loan Association, 9 Ariz.App. 65, 449 P.2d 301 (1969); McKinley v. Greyhound Park, 5 Ariz.App. 93, 423 P.2d 368 (1967); Patton v. Paradise Hills Shopping Center, Inc., 4 Ariz.App. 11, 417 P.2d 382 (1966). Appellant has filed an affidavit with the court signed by the attorney who tried this case in an attempt to cure this deficiency. Af-

fidavits cannot be used to raise facts extraneous to the record. Tucson Gas & Electric Company v. Schantz, 5 Ariz.App. 511, 428 P.2d 686 (1967). We therefore decline to consider this issue.

Appellant also contends that the trial court erred in denying its motion to strike the testimony of appellees' appraiser as to certain sales which occurred after the taking. Appellees used this testimony to prove the value of the subject property before the taking. Appellant claims this constituted prejudicial error because the sales included an enhancement in value due to the project which occasioned the taking of appellees' property.

■■ Sales occurring after the date of taking can be used to show the value of the subject property in the "before" situation. Defnet Land & Investment Co. v. State, 14 Ariz.App. 96, 480 P.2d 1013 (1971). It is also the general rule that comparable sales which reflect an enhanced value brought about by the making of the improvement are not admissible. Robles v. City of Tucson, 16 Ariz.App. 100, 491 P.2d 489 (1972); City of Chicago v. Blanton, 15 Ill.2d 198, 154 N.E.2d 242 (1958); Socony Vacuum Oil Company v. State, 170 N.W. 378 (Iowa 1969); Redfield v. Iowa State Highway Commission, 252 Iowa 1256, 110 N.W.2d 397 (1961); Cole v. Boston Edison Company, 338 Mass. 661, 157 N.E.2d 209 (1959); Latham Holding Co. v. State, 16 N.Y.2d 41, 261 N. Y.S.2d 880, 209 N.E.2d 542 (1965); State Highway Commission v. Lacey, 79 S.D. 451, 113 N.W.2d 50 (1962); City of Houston v. Collins, 310 S.W.2d 697 (Tex. Civ.App.1958); 5 Nichols, The Law of Eminent Domain § 21.31[1] (1969). This general rule is subject to the caveat that project enhancement can be considered when the property was not "probably within the scope of the project from the time the government was committed to it." Merced Irrigation District v. Woolstenhulme, 4 Cal.3d 478, 93 Cal.Rptr. 833, 483 P.2d 1 (1971).

■ The burden in this case was upon appellant to show that an otherwise comparable sale is not comparable because the price has been affected by the proposed project. Socony Vacuum Oil Company v. State, supra. This burden is in connection with the preliminary question of whether the evidence of the sale is admissible, initially a question left to the sound discretion of the trial court. State v. McDonald, 88 Ariz. 1, 352 P.2d 343 (1960); Town of Williams v. Perrin, 70 Ariz. 157, 217 P.2d 918 (1950).

In Robles v. City of Tucson, supra, we held that the court did not abuse its discretion by admitting sales into evidence when there was a valid question of fact as to whether the proposed project influenced the sales. In such instances whether the sales were affected or not is a question for the jury under proper instructions by the court.

■ Turning our attention to the facts, the instant condemnation action was for the purpose of constructing the Main Avenue-Granada Avenue realignment. In the "before" situation the subject property abutted Main Avenue on the East and Granada Avenue on the West. Located directly across the subject property on Main Avenue was the office building of Tucson Gas and Electric Company. This property also abutted West Sixth Street on its southern boundary. Main Avenue extended North of the subject property an additional block, crossed the Southern Pacific Railroad right-of-way and continued in a northerly direction.

In the "after" situation, Granada Avenue, as realigned, cuts northerly across the rear of the subject property, northerly through the block immediately north of the subject property, crosses the railroad tracks and then ties into old Main Avenue. The portion of Main Avenue which bordered the subject property and the Tucson Gas and Electric property is still in existence but instead of crossing the railroad tracks it turns to the left at the tracks and ties into the new Main-Granada transition.

The City condemned the rear 13,322 square feet of the subject property. The access of the subject property and all prop-

erties between the subject property and the railroad track is denied due to the new re-aligned avenue.

■ Appellees' appraiser, in valuing the subject property in the "before" situation, used seven sales which occurred after the date of the taking, including the purchase of the remainder of the subject property. All of these sales were made to Tucson Gas and Electric Company and ranged in price from $1.01 per square foot to $13.47 per square foot. All sales abutted the west side of the old Main Avenue in the two blocks previously mentioned. Using these sales, appellees' appraiser valued the subject property in the "before" situation at $7.00 per square foot for a total value of $166,810.00. He also thought that the construction of the improvement had damaged the subject property because it no longer had access to Granada Avenue along its western border. He therefore valued the subject property in the "after" situation at $6.00 per square foot, which was the price that Tucson Gas and Electric Company paid for it. Appellees' appraiser testified to damages in the sum of $93,254 for the part taken and $10,508 for the severance damages. Appellant's appraiser valued the subject property at $1.65 per square foot in the "before" situation for a total of $48,700. He valued that part taken at $24,200 and testified that there were no severance damages. The jury awarded damages for the part taken in the sum of $66,610, and severance damages in the sum of $5,000, a total of $71,610.

The transcript shows appellees' theory to be that the largest influence on real property values in the area and on the subject property was the presence of Tucson Gas and Electric Company. Appellees' appraiser stated that the construction of the Main-Granada realignment did not enhance the value of the questioned sales, but in fact, lessened the value of the properties. Appellant points to certain answers made by appellees' appraiser on cross-examination which it claims shows conclusively that the sales used contained project enhancement. We do not agree. The appraiser's testimony can best be illustrated by the following answer which the witness gave on cross-examination and which was omitted from appellant's brief:

"I appraised the property on the basis of what occurred, the thirteen sales that I considered and also the fact that Tucson Gas & Electric Light—Tucson Gas & Electric Company were going to become—were aware of the fact they were going to look for someplace to expand. It was my opinion had not the condemnation taken place that they would still be interested in purchasing property in this area particularly in the area where the subject property is south of the arroyo in anticipation of the expansion and based on the fact that they felt at that time that they could buy the property as cheap as they probably ever would be able to."

Appellant's trial theory was that the comparable sales used by appellees were project-enhanced since they reflected realization by Tucson Gas and Electric Company that it would be "landlocked" as a result of the new alignment. If appellant uses the word "landlocked" to mean that Tucson Gas and Electric Company would not have access to any public streets from its property, the record is clear that this is not true. If appellant uses the term to mean that a limited number of parcels would be available for its future expansion, then the record is equally clear that this was as true in the "before" situation as in the "after" situation.

At appellant's request the court properly instructed the jury that it should not consider, for the purpose of valuing the subject property in the "before" situation, sales which reflected higher valuation due to project enhancement.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.