869 P.2d 1219

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellee,**

v.

**Grace M. CLAUSS, Defendant–Appellant.**

No. 1 CA–CV 91–0621.

Court of Appeals of Arizona, Division 1, Department B.

March 8, 1994.

Roderick G. McDougall, Phoenix City Atty. by Sharon K. Haynes, Asst. City Atty., Phoenix, for plaintiff-appellee.

Streich Lang, P.A. by Dan M. Durrant, Phoenix, and Leonard M. Bell, P.C. by Leonard M. Bell, Scottsdale, for defendant-appellant.

## OPINION

CONTRERAS, Judge.

Defendant–Appellant Grace M. Clauss ("Appellant") appeals from a judgment awarding her $1.25 million against the City of Phoenix in an eminent domain proceeding which resulted in the taking of an eighty-nine acre parcel on the northwest end of the South Mountain range. The primary issue presented is whether the trial court erred, under the fact situation presented here, by instructing the jury not to consider any decrease or increase in the condemned property's value which resulted from either the taking itself or the planned public project that included the taking. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–2101(B). We conclude that the trial court erred in giving the instruction, and we, therefore, reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Appellant owned a parcel of 88.567 acres at the southwest corner of the 19th Avenue and Elliott Road alignments in Phoenix. The southern and eastern boundaries of the Appellant's property abut the original 1924 boundary of South Mountain Park, a public open space area. In the 1960's and 70's, the City of Phoenix adopted the Phoenix Mountain Preserve approach to acquiring land for its various mountain preserve properties, including additions to South Mountain Park. At all times relevant to this litigation, Appellant's property bordered on mountain preserve property to the west. There is a distinction between South Mountain Park in its relationship to Appellant's property since South Mountain Park was already in existence and may have contributed to the desirability of Appellant's property prior to the commencement of the mountain preserve acquisition program which sought to acquire Appellant's property.

The City of Phoenix acquired the Appellant's property through its power of eminent domain, planning to include it as part of the mountain preserve. The City filed its condemnation complaint on April 7, 1989 (the valuation date).

At trial, real estate appraiser Robert L. Blake testified on Appellant's behalf. He testified that he had appraised Appellant's property by the development approach and opined that its value on the valuation date was $2,965,000.00. In connection with Blake's testimony, Appellant offered exhibit 60, consisting of five typewritten sheets showing sales of lots in the Canyon Reserve subdivision on the south side of South Mountain and twenty-three other sales on the north side of the north Phoenix mountains. Although exhibit 60 was not supplied as part of the record on appeal, at oral argument it was presented and received by this court.

At trial on voir dire examination by the City's counsel, Blake acknowledged that seven sales listed on the first page of exhibit 60 were still in escrow. The City's counsel objected to admission of sales in escrow. The City argued that unless the witnesses were able either to demonstrate that the sales had closed escrow or give some background information explaining why they had not, then essentially they were equivalent to mere offers which are inadmissible pursuant to *State v. McDonald*, 88 Ariz. 1, 352 P.2d 343 (1960).

At the suggestion of Appellant's counsel, the first page of exhibit 60 was removed and preserved as exhibit 60, and the remaining four pages were marked and admitted as exhibit 60A. The trial court sustained the City's objection, ruling that Blake could not testify about sales of comparable properties still in escrow. Blake was permitted to testify concerning completed sales of comparable mountain lots ranging from $95,000 to $225,000.

After the close of the evidence, counsel and the court discussed whether the court should give the City's proposed "project enhancement" instruction no. 7:

> In determining the fair market value of the subject property before the taking, you must assume that the public project did not exist. In other words, the condemned property cannot be charged with a lesser value at the time of the taking when the decrease in such value is caused by the taking itself or by reason of the fact that a public project has been planned which includes the subject property. On the other hand, the condemned property should not be credited with a higher value because news of the public project may have increased its value. You should give the subject property the value that it would have had, as if the public project had never been planned.

Appellant's counsel objected to this instruction on the basis that it was not supported by the evidence and could cause confusion and be misleading. The trial court gave the proposed instruction.

After deliberating, the jury awarded Appellant $1,250,000.00. The trial court entered judgment in accordance with the verdict. Appellant timely appealed.[1]

## JURY INSTRUCTIONS

[1–3] Appellant contends that the trial court's instruction to the jury regarding "project enhancement" was misleading and confusing to the jury. We agree. This court will not overturn a verdict on the basis of jury instructions unless there is substantial doubt about whether the jury was properly guided. *Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App.1989). Erroneous jury instructions do not require reversal unless the error prejudiced the appellant's substantial rights. We will not presume prejudice; it must appear

1. Neither party's brief complies with the requirement of Rule 13(a)(6), Arizona Rules of Civil Appellate Procedure ("ARCAP"), that "[w]ith respect to each contention raised on appeal, the proper standard of review on appeal shall be identified, with citations to relevant authority, at the outset of the discussion of that contention." *See also* ARCAP 13(b) (answering brief must comply with ARCAP 13(a) with certain exceptions). Each party tacitly assumes, incorrectly, that resolution of any issue in the party's favor on the merits will entail a favorable disposition of the appeal. Counsel's failure to comply with the rule has unnecessarily required the Court to expend valuable judicial time and resources.

affirmatively in the record. *Walters v. First Federal Savings & Loan Association of Phoenix,* 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982).

When the trial court instructs the jury on a theory that is not supported by facts in evidence, however, we must reverse because the trial court has invited the jury to speculate about possible nonexistent circumstances. *Brierley v. Anaconda Co.,* 111 Ariz. 8, 12, 522 P.2d 1085, 1089 (1974); *Spur Feeding Co. v. Fernandez,* 106 Ariz. 143, 148, 472 P.2d 12, 17 (1970); *Herman v. Sedor,* 168 Ariz. 156, 158, 812 P.2d 629, 631 (App.1991).

The "project influence doctrine" (also referred to as "project enhancement") holds that property may not be charged with a lesser or greater value at the time of taking, when the change in value is caused by the taking itself or by anticipation of appreciation or depreciation arising from the planned project. *See State v. Hollis,* 93 Ariz. 200, 206, 379 P.2d 750, 753 (1963) ("property cannot be charged with a lesser value at the time of taking when the decrease in such value is occasioned by the taking itself."); *Uvodich v. Arizona Board of Regents,* 9 Ariz. App. 400, 405, 453 P.2d 229, 234 (1969) ("[T]he damage caused by the imminence of condemnation is merely one of the costs of ownership.") The doctrine applies only to properties that were "probably within the scope of the project from the time the government was committed to it." *City of Tucson v. Ruelas,* 19 Ariz.App. 530, 532, 508 P.2d 1174, 1176 (1973), (citing *Merced Irrigation District v. Woolstenhulme,* 4 Cal.3d 478, 93 Cal.Rptr. 833, 483 P.2d 1, 7 (1971)). The doctrine also excludes evidence of "comparable" sales that reflect an enhanced or reduced value due to the governmental plan or project that occasioned the taking of the property in question. *Ruelas,* 19 Ariz.App. at 532, 508 P.2d at 1176.

Here, over Appellant's objection, the trial court instructed the jury that it could assign neither a higher nor a lower value to the property if the increase or decrease in value was caused by the taking itself or by the planned public project that included the taking. We agree with Appellant's conten-

tion that the trial court erred when it gave the City's proposed instruction no. 7.

It is true that witness Richard Counts testified that the Appellant's property was being acquired for the Phoenix Mountain Preserve. John Loper testified that the City acquired two-thirds of a 30 acre parcel immediately west of the Appellant's property for the mountain preserve program about two years before the instant condemnation action was filed. However, it is also true that Appellant's evidence showed her own and comparable properties were entitled to premium valuation because they were close to the guaranteed public open space represented by the long pre-existing *South Mountain Park* in both its original and expanded form. Contrary to the City's argument, however, these facts are not equivalent to a showing that the value of Appellant's property or comparable properties was enhanced either by the market influence of the Phoenix Mountain Preserve acquisition program or by that of the proposed taking of Appellant's property. Instead, these facts suggest that the Appellant is entitled to the full benefit of any enhanced value that resulted from her property's location next to *South Mountain Park.* The record contains no evidence that the Phoenix Mountain Preserve acquisition program affected the market for Appellant's property or any comparable properties.

The condemnor shoulders the burden of proving that the subject property was "probably within the scope of the project from the time the government was committed to it." *Ruelas,* 19 Ariz.App. at 532, 508 P.2d at 1176. The City provided no evidence concerning either the operation of the Phoenix Mountain Preserve acquisition program or the relationship between that program and South Mountain Park, or how that relationship may have increased the value of the subject property. Based upon the evidence presented, we conclude the challenged instruction had no legitimate function in the case. Its only likely role was to suggest incorrectly to the jury that it should disregard expert evidence from several sources that the location of Appellant's property next to public open space (South Mountain Park) enhanced its fair market value.

## EXCLUSION OF SALES IN ESCROW

Appellant also contends that the trial court erred when it refused to allow appraiser Robert Blake to testify about sales of comparable property that had not closed escrow. We address this issue because we believe it is likely to arise again upon remand.[2]

■ It is well settled that bare offers to purchase, without more, are inadmissible on the issue of market value of real property. *See State v. McDonald*, 88 Ariz. 1, 9, 352 P.2d 343, 348 (1960) (refused offer of impecunious purchaser should not have been admitted to prove value of property). Offers to purchase are suspect because they often represent the opinion of one person and are difficult to authenticate. *Id.* at 9–10, 352 P.2d at 348 (citing Orgel, *Valuation Under Eminent Domain* (2d Ed.) § 148). Our supreme court concluded:

> [W]e must distinguish offers relating to property taken from offers relating to property not taken and with respect to both types of property, we must differentiate offers by the owner to sell from offers of third parties to buy. The courts have generally held that evidence of offers to buy property other than that taken may not be admitted.

88 Ariz. at 9–10, 352 P.2d at 348.

The proposed evidence in this case transcends the mere offer proposed in *McDonald*. At the very least, the Appellant's comparable sales evidence consisted of sales that were still in escrow but had not yet closed. We often imply a bilateral enforceable agreement for sale from the presence of escrow instructions. *See Horizon Corp. v. Westcor, Inc.*, 142 Ariz. 129, 135, 688 P.2d 1021, 1027 (App.1984) ("Without the escrow instruction there would have been no contract.").

■ Although such an agreement would be executory, executory contracts for sale are admissible as comparable sales in condemnation proceedings. *See United States v. 428.02 Acres of Land, etc.*, 687 F.2d 266, 270 (8th Cir.1982) ("[W]hen the trial judge effectively precludes all evidence of sales, or con-

tracts for sale, of property that is comparable to the property being condemned, the ultimate goal of just compensation may be defeated."); *Wolff v. Commonw. of Puerto Rico*, 341 F.2d 945, 947 (1st Cir.1965) ("A sale conditioned on a reclassification is nonetheless a sale, . . . and the fact that it was not consummated cannot be an objection."); *United States v. Certain Parcels of Land in the City of Philadelphia*, 144 F.2d 626, 629–30 (3d Cir.1944) (evidence of unconsummated contract for sale of land may be properly admitted to arrive at just compensation); *People ex rel. Department of Public Works v. Kawamoto*, 230 Cal.App.2d 18, 40 Cal.Rptr. 685, 686–87 (1964) (actual consummation of land sale not essential to admissibility of evidence of Agreement For Sale for purpose of supporting expert opinion concerning value of condemned property); *Arnold v. Maine State Highway Comm'n*, 283 A.2d 655, 659 (Me.1971) (enforceable contract for sale of property later taken in condemnation proceedings admitted as "strong and significant evidence" of fair market value at the time of the taking); *Western Michigan Univ. Bd. of Trustees v. Slavin*, 381 Mich. 23, 158 N.W.2d 884, 888 (1968) (bilateral sales agreement, binding on both parties, admissible to show value of condemned property); *City of East Orange v. Crawford*, 78 N.J.Super. 239, 188 A.2d 219, 222 (1963) (evidence admitted of price at which condemnees agreed to sell the property prior to the taking); *State v. Clevenger*, 384 S.W.2d 207, 210 (Tex.Civ.App. 1964) (although contract for sale of land not consummated because purchaser forfeited earnest money placed in escrow, it was ruled admissible as a comparable sale upon which condemnees' expert could rely in valuing condemned land).

■ Executory agreements for sale which are conditional in nature have also been held to be admissible evidence. In *Slavin*, 158 N.W.2d at 888, the court held that a conditional executory contract for sale should have been admitted into evidence as a comparable sale when testimony revealed that the conditions had been fulfilled. Thus,

---

**2.** We acknowledge that with the passage of time the particular escrows in question have probably closed. However, other evidence of similar nature may be offered at retrial.

it is clear to us that the presence of escrow agreements is prima facie evidence of an underlying bilateral agreement enforceable by either party.

 Objections to the validity of executory contracts affect the *weight* of the evidence rather than its *admissibility*. *Certain Parcels of Land in City of Philadelphia*, 144 F.2d at 630. The jury, in deciding the weight to be accorded to such evidence, may consider whether the offer was bona fide and for cash and whether or not the offeror would be able to comply with the offer if it were accepted. *McDonald*, 88 Ariz. at 10, 352 P.2d at 349, (citing *City of Chicago v. Harrison–Halsted Bldg. Corp.*, 11 Ill.2d 431, 143 N.E.2d 40, 45 (1957)). Once prima facie evidence of a comparable sale has been introduced, the burden of rebutting the validity of the agreement underlying the escrow should rest with the party opposing the admission of the comparable sales evidence.

 In light of the foregoing, we conclude that an unconsummated contract for sale of land, subsequently placed in escrow, is competent evidence of a comparable sale upon which the jury may rely to value the subject property at the time of taking. Even if the executory agreement is conditional, the jury should be allowed to consider whether the conditions were or could have been fulfilled. *Slavin*, 158 N.W.2d at 888.

We reverse and remand this matter for proceedings consistent with this decision.[3]

JACOBSON, P.J., and LANKFORD, J., concur.

---

3. Because we reverse and remand for a new trial in favor of Appellant, we find it unnecessary to address Appellant's argument that she was preju-

diced by the trial court's inconsistent treatment of post-deposition testimony from Mr. Fagan and Mr. Temple.