EPPICH, Judge:
¶1 In this eminent domain case, Cheryl Tanno and the estate of Pasquale Tanno appeal from a final judgment awarding them $365,910 in compensation for real property condemned by the City of Tucson. They argue the trial court committed error in making evidentiary determinations, refusing to tender certain jury instructions, and declining to award sanctions for a purported discovery violation. For the reasons that follow, we affirm.
Factual and Procedural Background
¶2 In 2015, the City of Tucson filed an eminent domain complaint in superior court seeking to condemn a parcel of real property owned by the Tannos. The city sought to acquire the property for the development of the "Downtown Links," a proposed roadway project it asserted was for public use. In response, the Tannos requested a determination of the value of the condemned property and a jury trial.
¶3 After the conclusion of discovery, the city filed several motions in limine seeking to exclude portions of expert testimony disclosed by the Tannos, portions of Cheryl's testimony regarding the value of her property, and evidence relating to certain legal theories advanced by the Tannos. After conducting three hearings, the trial court granted the majority of the city's motions.
¶4 The case proceeded to a jury trial, where the sole issue was the value of the Tanno property. At trial, the court reaffirmed its prior evidentiary rulings, in some instances considering more evidence than was available at the time of its pretrial rulings. The jury returned a verdict in favor of the Tannos, awarding them $365,910 for the fair market value of the property. The trial court issued a final, appealable judgment based on the jury's verdict. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).
Eminent Domain
¶5 In Arizona, the state, a county, city, town, village, political subdivision, or person, may exercise the right of eminent domain to acquire property for public use. See A.R.S. § 12-1111. Pursuant to our constitution, however, a property owner is entitled to just compensation for land taken by eminent domain. Ariz. Const. art. II, § 17. "Just compensation is the amount of money necessary to put the property owner in as good a *205 financial position as if the property had not been taken." City of Phoenix v. Wilson , 200 Ariz. 2, 5, ¶ 8, 21 P.3d 388, 391 (2001). Further, "[t]he value of land taken by eminent domain in Arizona is to be determined by the market value of the property: by what a willing buyer would pay for the property and what a willing seller would take." State ex rel. Ordway v. Buchanan , 154 Ariz. 159, 162, 741 P.2d 292, 295 (1987). The market value of the property is set as of the day of the summons. A.R.S. § 12-1123(A).
¶6 The Tannos argue the trial court committed several errors that prevented them from receiving just compensation for their property. Their arguments largely stem from the court's decision not to admit certain evidence, which the Tannos contend would have shown the property's value. "A trial court has broad discretion in the admission of evidence, and we will not disturb its decision absent an abuse of that discretion and resulting prejudice." Crackel v. Allstate Ins. Co. , 208 Ariz. 252, 268, ¶ 59, 92 P.3d 882, 898 (App. 2004). "To test whether a trial court has abused its discretion, we must determine not whether we might have so acted under the circumstances, but whether the lower court exceeded the bounds of reason by performing the challenged act." Toy v. Katz , 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App. 1997). "It is well established law in Arizona that appellate courts will not disturb the exercise of discretion of the trial court if it is supported by any reasonable evidence." Peters v. M & O Constr., Inc. , 119 Ariz. 34, 36, 579 P.2d 72, 74 (App. 1978).
Evidence of Project Influence
¶7 The Tannos first argue the trial court erred in precluding evidence of the city project's influence on the value of their property. They argue they should have been permitted to present evidence of a roadway project initiated by the Arizona Department of Transportation (ADOT) in the 1980s, asserting the Downton Links is a continuation of that same project. They argue the decades-long development of the roadway resulted in a substantial decrease to the value of their property, or "condemnation blight."
¶8 Under the project influence doctrine, "property may not be charged with a lesser or greater value at the time of taking, when the change in value is caused by the taking itself or by anticipation of appreciation or depreciation arising from the planned project." City of Phoenix v. Clauss , 177 Ariz. 566, 569, 869 P.2d 1219, 1222 (App. 1994) ; see also A.R.S. § 28-7097 ("[W]hen determining the market value of the property to be taken ... a decrease or increase in the market value ... before the date of valuation caused by the public project for which the property is to be acquired ... shall be disregarded."). Thus, pursuant to this doctrine, a property owner in an eminent domain action is entitled to recover damages from a decrease in value caused by the government project for which the property is taken. See Clauss , 177 Ariz. at 569, 869 P.2d at 1222. But, "[t]he doctrine applies only to properties that were 'probably within the scope of the project from the time the government was committed to it.' " Id. (quoting City of Tucson v. Ruelas , 19 Ariz. App. 530, 532, 508 P.2d 1174, 1176 (1973) ).
¶9 The trial court determined the ADOT project and the Downtown Links were separate and distinct projects. The court thus concluded that any decrease in value caused by the ADOT project would not have been recoverable as damages caused by development of the Downtown Links project. In doing so, the court concluded the ADOT project had been abandoned "in or about the year 2000," and further concluded "the City began planning the Downtown Links Project in approximately 2005 or 2006." As a result, the court precluded the Tannos "from seeking damages for 'Condemnation Blight' allegedly caused by the State of Arizona's plans and activities related to the [ADOT project]."
¶10 The Tannos have not established the trial court abused its discretion, as there was reasonable evidence to support the court's conclusion that the Downtown Links was distinguishable from the ADOT project. See Peters , 119 Ariz. at 36, 579 P.2d at 74. While the projects are similar, perhaps even similar enough to support a determination that the Downtown Links is a continuation of the prior ADOT project, our role on review is limited to determining whether there was *206 reasonable evidence to support the court's conclusion that the two projects were distinct. See Toy , 192 Ariz. at 83, 961 P.2d at 1031.
¶11 The ADOT project initially sought to construct a state route with a speed limit of fifty miles per hour, similar to a freeway. Plans for the Downtown Links also include a parkway-style roadway, but with plans to include landscaping, major infrastructure for rainwater drainage, and a speed limit of thirty miles per hour. There was evidence the city had planned to complete the last mile of the project which had been abandoned by ADOT in 1989.[1] However, the Downtown Links was not approved by a city resolution until 2009. If the Downtown Links were a mere continuation of the ADOT project, we fail to see how a separate resolution approving it would have been necessary.
¶12 Based on the trial court's reasonable conclusion that the two projects were distinct, any decrease in value caused by the ADOT project would not have been attributable to the Downtown Links. Thus, any evidence of such would not be admissible as evidence of project influence from the Downtown Links. See Clauss , 177 Ariz. at 569, 869 P.2d at 1222. Accordingly, the court did not abuse its discretion in precluding the Tannos from seeking damages for project influence prior to 2005 or 2006, the timeframe in which the city had apparently committed to the Downtown Links project.
Evidence of Best Use
¶13 The Tannos next argue the trial court erred in disallowing evidence of the best use of their property. Specifically, they contend they should have been permitted to present expert testimony of the property's potential "assemblage" with other properties in the area, thereby increasing its potential value.[2]
¶14 In order to determine the value of property in a condemnation case, the highest and best use of the property must be considered. Wilson , 200 Ariz. 2, 5-6, ¶ 8, 21 P.3d 388, 391-92. There is no rigid formula to determine the value of a parcel of property, and each case must be viewed in light of its own facts. Id. ¶¶ 15-16. While the best use of a smaller tract of property may be in combination with others as part of a larger tract of property (as in an assemblage theory), such evidence of best use should be grounded in common sense and market data. Cf. id. ¶¶ 12, 16. "Remote and speculative damages may not be considered in eminent domain cases." City of Tucson v. Estate of DeConcini , 155 Ariz. 582, 583, 748 P.2d 1206, 1207 (App. 1987).
¶15 The trial court precluded evidence of assemblage, stating it was the Tannos' "burden to show that as of the time of taking, development based on assemblage of surrounding parcels was reasonably probable at any time in the foreseeable future," and concluding the Tannos had failed to meet that burden. It also noted that even if there was some evidence to show that assemblage was probable, the expert's opinion on the value of the property apparently did not depend on an assemblage theory. The expert assigned the same value to the Tannos' property both as a single parcel and under an assemblage theory. The court thus concluded "the theory of assemblage is of very minimal relevance and its relevance is substantially outweighed by Rule 403 considerations of wasting time and confusing the issues and misleading the jury." See Ariz. R. Evid. 403.
*207 ¶16 The Tannos have not established the trial court abused its discretion in concluding the possibility of assemblage was remote or speculative. See id. In support of their argument, the Tannos point to a city document showing their property could be joined with surrounding properties into a larger tract for development. But the document does not establish that assemblage of the properties would be supported by the market or that it was likely to occur. See Wilson , 200 Ariz. 2, 8, ¶ 16, 21 P.3d 388, 394. Indeed, interests in the surrounding properties were owned by the state or the city, presenting a significant obstacle to joining them with the Tanno parcel.
¶17 Furthermore, the Tannos apparently do not contest the trial court's conclusion that the expert's testimony on value was not based on assemblage. Thus, the court could have reasonably concluded that theory had minimal probative value to the expert's testimony. Accordingly, it was within the court's discretion to preclude evidence of assemblage if its probative value was substantially outweighed by the dangers of wasting time, confusing the issues, or misleading the jury, as it did here. See Ariz. R. Evid. 403. We see no abuse of discretion.
Owner Testimony
¶18 The Tannos also argue the trial court "improperly excluded, or improperly limited, [Cheryl] Tanno's opinion of value, as the [property] owner," asserting the court's rulings effectively precluded her from "explaining the methods she used to support her opinion of value." In Arizona, a property owner may always testify about the value of his or her property because "[a]n owner of property has, by definition, knowledge of the components of value that are useful in ascertaining value." Town of Paradise Valley v. Laughlin , 174 Ariz. 484, 486, 851 P.2d 109 , 111(App. 1992) (alteration in Laughlin ) (quoting United Cal. Bank v. Prudential Ins. Co. of Am. , 140 Ariz. 238, 304, 681 P.2d 390, 456 (App. 1983) ). In other words, a property owner may testify to the value of his or her property because he or she has knowledge of what makes it valuable, even if he or she is not qualified as an expert. Id.
¶19 The Tannos argue Cheryl should have been able to testify that $250,000 from 1993 would have been worth $1,065,655 in 2015 had it been invested in companies listed in the stock market's S & P 500.[3] They point to a 1993 negotiation with the city, in which both sides purportedly agreed the property was worth $250,000. The trial court precluded evidence of the value of the hypothetical investment, concluding Cheryl "did not tie that figure to what she thinks the fair market value of her property was in 2015." It found that line of testimony would be irrelevant, and concluded even if it were relevant, it would be "substantially outweighed by Rule 403 concerns."
¶20 The Tannos have not established the trial court abused its discretion in precluding evidence of a hypothetical investment. When deposed, Cheryl could not tie the value of her hypothetical investment to the actual value of her property, or any components of value thereof. As such, her opinion of value based on an investment theory was not rooted in her experience as a land owner-the very experience which would have qualified her to give valuation testimony notwithstanding her lack of expert qualifications. See Laughlin , 174 Ariz. at 486, 851 P.2d at 111. We therefore cannot conclude the trial court abused its discretion in limiting this aspect of Cheryl's testimony, even in light of the general latitude given to land owners testifying to the value of their property. See id. ; see also Ariz. R. Evid. 403.
Motions in Limine
¶21 The Tannos also argue the trial court's evidentiary rulings, described above, constituted "improper[ ] ... dispositive relief," contrary to Rule 56, Ariz. R. Civ. P. In order for us to reach this issue, we first consider whether the Tannos have waived any right of review for failure to present the issue below. See *208 Cont'l Lighting & Contracting, Inc., v. Premier Grading & Utils., LLC , 227 Ariz. 382, 386, ¶ 12, 258 P.3d 200, 204 (App. 2011) (argument waived by failing to raise it below). The Tannos did not raise any argument premised upon Rule 56 in any of their written responses opposing the city's motions in limine. In response to the trial court's questioning at a pretrial hearing, however, the Tannos argued "[i]f [the admissibility of evidence of assemblage] were a question of law, it should have been brought up as a motion for partial summary judgment." While not particularly well-developed below, we conclude the issue as it relates to evidence of best use (or assemblage) was sufficiently preserved for our review.
¶22 Based on the briefs submitted on appeal, the arguments of counsel at oral argument before this court, and our own review of the record, it appears the Tannos failed to raise a Rule 56 challenge to the project influence and owner testimony regarding value rulings below. As a general rule, appellate courts "will not consider issues not raised in the trial court." Hawkins v. Allstate Ins. Co. , 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987). Our supreme court has explained: "The concept of waiver is based on two factors: fair notice and judicial efficiency." Geronimo Hotel & Lodge v. Putzi , 151 Ariz. 477, 479, 728 P.2d 1227, 1229 (1986). But, waiver "is merely a rule of procedure, and not a matter of jurisdiction," Town of S. Tucson v. Bd. of Supervisors , 52 Ariz. 575, 582, 84 P.2d 581, 584 (1938), and our supreme court has, in its discretion, declined to find waiver when considering "issues of statewide importance, those of constitutional dimension or situations in which the public interest is better served by having the issue considered rather than deferred," Schoenfelder v. Ariz. Bank , 165 Ariz. 79, 90 n.8, 796 P.2d 881, 892 (1990) (quoting Dombey v. Phx. Newspapers, Inc. , 150 Ariz. 476, 482, 724 P.2d 562, 568 (1986) ); accord Harris v. Cochise Health Sys. , 215 Ariz. 344, 349, ¶ 17, 160 P.3d 223, 228 (App. 2007) ("[A]lthough Arizona appellate courts have the discretion to hear arguments first raised on appeal, we rarely exercise that discretion.").
¶23 This case involves the right of a property owner to receive just compensation for property condemned pursuant to eminent domain-a right of constitutional dimension. See Ariz. Const. art. II, § 17. The arguments presented for our review are purely legal and involve the same analysis as the Tannos' non-waived claim, making it judicially efficient for us to consider them. See Geronimo Hotel & Lodge , 151 Ariz. at 479, 728 P.2d at 1229. Moreover, the Tannos presented these arguments in their opening brief, and the city has been afforded the opportunity to, and did in fact, respond to them in its answering brief. See id. We thus conclude it is appropriate for us to address the Tannos' Rule 56 argument in its entirety. We review whether the court applied the proper legal standard in evaluating the city's motions de novo. See Mobilisa, Inc. v. Doe , 217 Ariz. 103, 107, ¶ 9, 170 P.3d 712, 716 (App. 2007).
¶24 The Tannos contend the city's motions in limine were essentially motions for summary judgment, and suggest the trial court's rulings did not comply with the requirements of Rule 56, effectively precluding their claim for just compensation. In support of their argument, the Tannos rely on two extra-jurisdictional cases holding a claim or defense may not be dismissed in a motion in limine. See Meyer Intellectual Props. Ltd. v. Bodum, Inc. , 690 F.3d 1354, 1378 (Fed. Cir.2012) ("Because we conclude that it was procedurally improper for the court to dispose of [defendant's] inequitable conduct defense on a motion in limine , we reverse the court's decision and remand for further proceedings."); Gold Cross Ems, Inc. v. Children's Hosp. of Ala. , 309 F.R.D. 699, 700-02 (S.D. Georgia 2015) ("The Court ... therefore finds that Plaintiff's motion in limine is an improper and untimely motion for summary judgment.").
¶25 But the Tannos have not provided any authority to establish that their theories of calculating just compensation through evidence of project influence, best use, and owner testimony, were, in and of themselves, claims or defenses. The trial court's rulings did not preclude the Tannos from pursuing their claim, which ultimately resulted in a monetary judgment in their favor. Rather, the court's rulings limited the evidence that could be introduced in support of the claim. As such, the court's rulings involved "disputed *209 evidentiary issue[s]" of relevance and Rule 403 considerations, which may be properly considered in a motion in limine. See Ariz. R. Civ. P. 7.2. We see no error.
Remaining Issues
¶26 The Tannos additionally argue the trial court erred in refusing to tender jury instructions or special interrogatories consistent with their theory of the case. But, they fail to meaningfully develop this argument. They do not cite any legal authority requiring the court to tender the instructions proposed, do not argue which instructions should have been given, and do not meaningfully establish how the instructions would have been supported by the facts in evidence. See Ariz. R. Civ. App. P. 13(a)(7) (argument must contain citations to legal authority and references to the record); Clauss , 177 Ariz. at 569, 869 P.2d at 1222 (jury instructions must be supported by facts in evidence). We therefore consider this argument waived, and decline to consider it further. See Ritchie v. Krasner , 221 Ariz. 288, 305, ¶ 62, 211 P.3d 1272, 1289 (App. 2009).
¶27 Similarly, the Tannos argue the trial court erred in declining to award sanctions for a purported discovery violation. Again, they fail to meaningfully develop this argument. Aside from providing a citation to Rule 37, Ariz. R. Civ. P., which generally affords the trial court discretion to award sanctions, their argument lacks citations to the record and argument supported by legal authority. See Ariz. R. Civ. App. P. 13(a)(7). This argument is waived. See Ritchie , 221 Ariz. 288, 305, ¶ 62, 211 P.3d 1272, 1289.
Disposition
¶28 The trial court's judgment is affirmed. Because the Tannos are not the prevailing party on appeal, we deny their request for attorney fees.

In particular, the Tannos rely on a city report outlining the background of the Downtown Links, which associates the Downtown Links with the ADOT project. According to the report, the ADOT project was largely completed in the 1980s with the exception of the final mile, which was not built due to "lack of funding and lack of community support." Responsibility for the final mile of the project was thus relinquished to the City of Tucson in 1989. Although the report supports the Tannos' argument, we are not persuaded it is sufficient to establish an abuse of the trial court's discretion.

"Assemblage," also referred to as "joinder," is "a theory involving the prospect of joining separate parcels." M & R Inv. Co. v. State ex rel. Dep't of Transp. , 103 Nev. 445, 451, 744 P.2d 531, 535 (1987). "If the highest and best use of separate parcels would involve a prospective, integrated, unitary use, then such prospective use may be considered in fixing the value of the property condemned providing joinder of the parcels is reasonably practicable ." Id.

The S & P 500 is an index of 500 widely held common stocks that measures the general performance of the financial market.