UNION PACIFIC RAILROAD COMPANY, Southern Pacific Transportation Company, and Burlington Northern Railroad, Plaintiffs,

v.

PUBLIC UTILITY COMMISSION OF OREGON and its members, Honorable Ron Eachus, Honorable Nancy Ryles, Honorable Myron B. Katz; and Dave Frohnmayer, Attorney General of the State of Oregon, Defendants,

and

Railway Labor Executive Association (RLEA), United Transportation Union (UTU), and Brotherhood of Locomotive Engineers (BLE), Intervenors.

Civ. No. 89–04–FR.

United States District Court,
D. Oregon.

Sept. 22, 1989.

---

Barry L. Groce, Allen, Kilmer, Schrader, Yazbeck & Chenoweth, Portland, Or., for plaintiff Union Pacific R. Co.

O. Meredith Wilson, Jr. and Marvin D. Fjordbeck, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for plaintiff Southern Pacific Transp. Co.

Randall B. Kester, James H. Gidley and Donald H. Hansen, Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland, Or., for plaintiff Burlington Northern R.R.

Dave Frohnmayer, Atty. Gen., Paul A. Graham and Michael T. Weirich, Asst. Attys. Gen., Salem, Or., for defendants.

Lawrence M. Mann, Alper & Mann, Washington, D.C., and Monte Bricker, Bricker, Zakovics & Querin, P.C., Portland, Or., for intervenors Ry. Labor Executives' Ass'n.

FRYE, District Judge:

The matter before the court is the motion for summary judgment of plaintiffs, Union Pacific Railroad Company (Union Pacific), Southern Pacific Transportation Company (Southern Pacific), and Burlington Northern Railroad (Burlington Northern) (referred to collectively as "the Railroads").

The Railroads seek a declaration that certain state rules pertaining to the operation of freight trains without cabooses issued by defendants, Public Utility Commission of Oregon and its individual members, Ron Eachus, Nancy Ryles, Myron B. Katz, and Dave Frohnmayer (referred to collectively as PUCO), are preempted by federal law. The Railroads seek to enjoin PUCO's enforcement of those rules. There are three intervenors, the Railway Labor Executive Association, United Transportation Union, and the Brotherhood of Locomotive Engineers (referred to collectively as RLEA). RLEA has submitted a brief opposing the Railroads' motion.

## UNDISPUTED FACTS

Prior to 1987, the State of Oregon required that "whenever a Class I railroad operates a freight train in this state, the rear car of the freight train shall be an occupied caboose." O.R.S. 761.610(1). The Railroads, the only Class I railroads operating in the State of Oregon, were granted exemptions from this requirement upon showing that their operations were safe. O.R.S. 761.615.

In 1987, however, the Oregon legislature repealed sections 761.610(1) and 761.615. 1987 Or.Laws 433. Oregon law currently provides that PUCO "upon its own motion or upon application of any person, by rule, shall prescribe standards [for operating freight trains] without an occupied caboose as the rear car." O.R.S. 761.612. PUCO then issued rules on an emergency basis effective October 8, 1987. Or.Admin.R. 860–45–015. The rules prescribe standards for operating freight trains in the State of Oregon without cabooses. Or.Admin.R. Bull. Vol. 27, No. 9. PUCO adopted Or.Admin.R. 860–45–015 (the temporary rules) effective June 20, 1988. Or.Admin.R.Bull. Vol. 28, No. 1.

In January, 1989, PUCO adopted Or.Admin.R. 860–45–020 to 860–45–220 and 860–44–345 (the permanent rules), effective January 11, 1989. The temporary rules were to have expired on January 11, 1989.

The Railroads brought this action against PUCO, and the parties stipulated to the issuance of a preliminary injunction enjoining the enforcement of the permanent rules and requiring the Railroads to comply with the temporary rules pending final resolution of this case. The Railroads seek a declaration that both the temporary and the permanent rules are preempted by federal law.

The temporary rules operate statewide and impose safety requirements on each Class I railroad wishing to operate freight trains without cabooses. The permanent rules apply only to trains operating on sections of railroad track identified by PUCO as running through a "local safety hazard." Local safety hazards are defined by PUCO as 1) those areas sensitive to hazardous waste materials; 2) gradient areas, 3) urban areas; and 4) railroad-highway grade crossings where PUCO has imposed maximum speed limitations. Or.Admin.R. 860–45–020(4).

Approximately twenty-one percent of the route miles of the railroads located in the State of Oregon have been identified by PUCO as running through a local safety hazard. These local safety hazards occur throughout the State of Oregon and involve various sections of track owned or used by the Railroads. For example, every one of Southern Pacific's trains starting in the State of Oregon must travel through at least one local safety hazard area. A similar situation exists for Union Pacific and Burlington Northern.

The permanent rules would require 1) the Railroads to install equipment in their locomotives not required by federal law; and 2) extra switching and delay of railroad cars containing certain hazardous waste materials. The Railroads contend that the permanent rules provide little or no additional safety for train operations in the State of Oregon beyond the safety already provided under federal law.

## DISCUSSION

The Railroads seek to have this court declare that both the temporary and the permanent rules are preempted by federal law. The Railroads have three principal arguments. First, they contend that the Federal Railroad Safety Act (FRSA), codified at 45 U.S.C. § 421 *et seq.*, preempts PUCO's temporary and permanent rules regarding cabooseless train operations in their entirety. Second, the Railroads contend that the Locomotive Boiler Inspection Act (LBIA), codified at 45 U.S.C. § 22 *et seq.*, preempts those rules which require additional equipment in the locomotive. Third, the Railroads contend that the Hazardous Materials Transportation Act (HMTA), codified at 49 U.S.C. § 1801 *et seq.*, preempts those rules which concern transport of hazardous materials.

### FRSA Preemption of Temporary and Permanent Rules

The purpose of the FRSA is "to promote safety in all areas of railroad operations

and to reduce railroad-related accidents, and to reduce deaths and injuries to persons and to reduce damage to property caused by accidents involving any carrier of hazardous materials." 45 U.S.C. § 421.

The FRSA requires "that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable." 45 U.S.C. § 434. The FRSA grants to the United States Secretary of Transportation the authority to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety." 45 U.S.C. § 431. The Secretary has delegated that authority to the Federal Railroad Administration (the FRA). 49 C.F.R. § 1.49(n).

■ The FRSA, however, clearly allows state regulation of railroad safety in two circumstances. First, a state may adopt or continue in force any rule until the FRA has adopted a rule covering the same subject matter. Second, a state may adopt or continue in force an additional or more stringent rule 1) when necessary to eliminate or reduce "an essentially local safety hazard;" 2) if it is "not incompatible with" any federal law or rule; and 3) if it does not create "an undue burden on interstate commerce." 45 U.S.C. § 434.

PUCO contends that the Oregon rules are not preempted because 1) FRA has not acted to regulate cabooseless operations; and 2) the Oregon rules are within the local safety hazard exception. The Railroads contend that 1) the FRA has already spoken on the issue of safety and cabooses, and that therefore PUCO is barred from issuing and enforcing either set of regulations; and 2) PUCO's rules do not address essentially local safety hazards, are incompatible with federal laws, and create an undue burden on interstate commerce.

### 1. The FRA Rejected a Caboose Requirement

■ In *Burlington Northern R.R. v. Montana,* 880 F.2d 1104 (9th Cir.1989), the court held that a Montana statute requiring an occupied caboose on trains more than 2,000 feet in length was preempted by the

FRA's safety regulations because the FRA's safety regulations cover the safety concerns addressed by the Montana statute. In *Burlington Northern,* the court examined two regulations promulgated by the FRA concerning cabooses. The first regulation permits the use of radio telemetry equipment to substitute for a train crew member's visual observations from a caboose at the rear of the train. 49 C.F.R. §§ 221.5–16. The second FRA regulation also allows radio telemetry equipment to monitor brake pipe pressure rather than requiring visual observation by a crew member. 49 C.F.R. §§ 232.13, 232.19. The court concluded that the FRA has examined the safety function of visual inspection from the caboose at the rear of the train by a crew member, and that the FRA had determined that a caboose requirement was unnecessary for safety, and that telemetry devices were adequate substitutes for visual observation by a crew member in a caboose. 880 F.2d at 1106.

Both the temporary and the permanent regulations promulgated by PUCO attempt to regulate whether cabooses must be used when the Railroads operate their freight trains in the State of Oregon, a safety issue already addressed by the FRA's regulations. The FRA's regulations specifically allow the use of radio telemetry to accomplish functions that workers in a caboose perform. The FRA's regulations do not require, as PUCO does, further devices as a condition of operating a freight train without a caboose. Because PUCO's temporary and permanent regulations cover subject matter already addressed by an FRA regulation or standard, they are preempted pursuant to 45 U.S.C. § 434. PUCO is prohibited from mandating the use of cabooses or, in the alternative, special equipment for operating without a caboose.

### 2. Local Safety Hazard Exception

Because the temporary regulations were applicable statewide and had nothing to do with local safety hazards, PUCO concedes that the temporary regulations are preempted upon a finding that they regu-

late subject matter that is already regulated by the FRA. PUCO and the RLEA contend, however, that the permanent regulations are allowed pursuant to the local safety hazard exception to preemption.

The Railroads argue that the PUCO "local safety hazards" are not "essentially local safety hazards" for purposes of 45 U.S.C. § 434. An "essentially local safety hazard" is a safety hazard that is 1) not statewide in character, and 2) not capable of being adequately encompassed in uniform national standards. *National Ass'n of Regulatory Util. Comm'rs v. Coleman*, 542 F.2d 11 (3d Cir.1976). PUCO's permanent regulations do not address essentially local safety hazards because the permanent regulations are statewide in character and capable of being addressed adequately in uniform national standards. The hazards defined by PUCO are not peculiar to the State of Oregon or parts of the State of Oregon; they involve the types of terrain and crossings that commonly occur throughout the national railroad system. *See* Or.Admin.R. 860–45–020. Indeed, the hazards as defined occur throughout the rail routes in the State of Oregon and are for practical purposes statewide. For this reason, PUCO's permanent regulations are not allowed under the local safety hazard exception.

The Railroads' motion for summary judgment is granted. The Railroads shall prepare the appropriate judgment.