Argued and submitted January 30, affirmed September 6, 1995, petition for review denied January 4, 1996 (322 Or 425)

Gregory A. WHITLEY,
*Respondent,*

*v.*

SOUTHERN PACIFIC
TRANSPORTATION COMPANY,
a Delaware corporation,
*Appellant.*

(9105-03193; CA A80632)

902 P2d 1196

Roger K. Stroup argued the cause for appellant. With him on the briefs was Bodyfelt Mount Stroup & Chamberlain.

Lawrence Baron argued the cause for respondent. With him on the brief were Kimberley Chaput and Pozzi Wilson Atchison.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff filed this action under the Federal Employer's Liability Act (FELA), 45 USC § 51, claiming that he was injured as a result of defendant's negligence. The jury returned a verdict for plaintiff. Defendant appeals, assigning error to the trial court's rulings regarding the admission of evidence and instructions to the jury. We affirm.

The underlying facts are not in dispute. Plaintiff worked for defendant, a railroad company, as a switchman. On June 10, 1988, plaintiff climbed down a ladder on the side of a railroad car. As he stepped from the ladder to the walkway, he twisted his ankle on a rock. Plaintiff reported his injury to defendant and did not return to work the next day. He obtained a doctor's authorization to stop working.

Defendant conducted an investigation of the accident, and on July 26, 1988, it fired plaintiff for failure to follow the company's safety rules. Plaintiff appealed the dismissal, seeking reinstatement and back pay. Before the conclusion of the appeal, plaintiff's doctor released him to work, and defendant allowed plaintiff to return without prejudice to his appeal. Subsequently, the appellate board held that plaintiff had violated company rules and was, therefore, not entitled to back pay. The board did, however, conclude that dismissal was unwarranted and ordered that defendant be reinstated, and he was.

Plaintiff then filed this action under the FELA, alleging that defendant was negligent "[i]n failing to provide plaintiff with a safe place to work" in that the walkway was not properly maintained, contained large rocks and contained a rock that exceeded the "maximum allowable." Plaintiff also alleged that defendant was negligent in failing to comply with four specific administrative rules, promulgated by the Public Utility Commission (PUC): OAR 860-44-300(1), which requires that railroad walkways have a regular surface and be "maintained in a safe condition"; OAR 860-44-300(2)(b), which specifies the type of surface materials that are to be used on walkways and the manner of their application; OAR 860-44-305(1), which specifies the maximum "grade and slope" allowed for walkways; and OAR 300-44-315, which

describes the necessary width and elevation of railroad walkways. Plaintiff requested both general damages and lost wages.

Before trial, defendant moved to exclude evidence of wages that plaintiff lost after he was physically able to return to work and evidence of plaintiff's embarrassment and humiliation regarding his discharge. Defendant argued that, because that evidence was related solely to plaintiff's discharge, and not his injury, those damages were not recoverable under the FELA and the evidence was, therefore, irrelevant. The trial court denied the motion.

At trial, plaintiff introduced evidence showing that the walkway on which he was injured did not comply with the state administrative rules. Plaintiff also testified that he had twisted his ankle when climbing off a railroad car and that, because of that injury, he was physically unable to return to work for about four months. Plaintiff testified that, despite his subsequent medical release, he remained unable to return to work because he had been discharged.

Plaintiff then testified that he felt "[a]nger and hurt, not just physical pain that I was in, but hurt that I was being treated this way," and that he found it "humiliating that they dismissed me over this." Plaintiff was concerned, because he "didn't really know if [he] would be allowed to come back to a career that [he] had put so much time in." Plaintiff's fiance testified that plaintiff was concerned that she would not marry him because he had lost his job and that plaintiff was embarrassed, humiliated and devastated by the discharge.

After all of the evidence was submitted, and before closing arguments were made, plaintiff withdrew his allegations regarding defendant's failure to provide a safe place to work. Instead, plaintiff relied solely on his allegation that defendant was negligent in its failure to adhere to the four specified administrative rules.

Following closing argument, the parties addressed the issue of jury instructions. Plaintiff requested that the trial court instruct the jury that defendant was under a duty to provide a "reasonably safe place to work." Defendant objected to that instruction, insisting that it would improperly allow the jury to find against defendant on an allegation

that had been withdrawn. Defendant requested an instruction informing the jury that it should consider plaintiff's contributory negligence. The trial court denied that request. The jury returned a special verdict in plaintiff's favor.

■        On appeal, defendant first assigns error to the admission of evidence of wages that plaintiff lost after he was able to return to work and to the admission of evidence of plaintiff's mental suffering. Defendant argues that the evidence of lost wages and mental suffering relates to plaintiff's discharge, and that damages resulting from an allegedly wrongful discharge may not be sought in an FELA claim, but must instead be sought exclusively under the arbitration procedures set forth in the federal Railway Labor Act (RLA). 45 USC § 151 *et seq.* Plaintiff counters that the scope of the compulsory arbitration provisions of the RLA is narrow and is limited to disputes arising out of the interpretation or application of collective bargaining agreements concerning rates of pay, rules or working conditions.

■■        Although this matter was tried in state court, it is governed by federal substantive law. *St. Louis Southwestern Railway Co. v. Dickerson*, 470 US 409, 411, 105 S Ct 1347, 84 L Ed 2d 303 (1985); *Staples v. Union Pacific R.R. Co.*, 265 Or 153, 155, 508 P2d 426 (1973). Under the FELA,

> "[e]very common carrier by railroad * * * shall be liable in damages to [employees] * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

45 USC § 51. That provision allows recovery for negligence, occupational injuries and diseases, intentional torts and some mental injury. *Lewy v. Southern Pacific Transp. Co.*, 799 F2d 1281, 1288 (9th Cir 1986). The RLA provides a framework for the arbitration of certain labor disputes in the railroad industry. Specifically, 45 USC § 153(i) provides that all

> "disputes between [railroad] employees and * * * carriers growing out of grievances or out of the interpretation of agreements concerning rates of pay, rules, or working conditions"

are subject to compulsory arbitration.

The relationship between the FELA and the RLA was extensively reviewed by the United States Supreme

Court in *Atchison, T. & S. F. R. Co. v. Buell*, 480 US 557, 561-67, 107 S Ct 1410, 1413-16, 94 L Ed 2d 563 (1987):

"In 1906, Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees. A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases. * * * The coverage of the statute is defined in broad language, which has been construed even more broadly. We have recognized generally that the FELA is a broad remedial statute, and have adopted a 'standard of liberal construction in order to accomplish [Congress's] objects.'

"The RLA, by contrast, provides a comprehensive framework for the resolution of labor disputes in the railroad industry. Enacted in 1926, the text of the RLA does not mention the FELA or otherwise deal with the subject of tort liability.

"* * * * *

"The [defendant] asserts first that employees have the right to have defects in the workplace corrected by resorting to the grievance machinery that is in place pursuant to the RLA, and that the RLA is the exclusive remedy for such minor disputes. Indeed, in this case, preliminary though abortive steps in that direction were actually taken. Thus, the [defendant] argues that an FELA action for damages is barred. We find no merit in this argument. *The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages.*

"This Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes. Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'

"This principle is instructive on the question before us. The FELA not only provides railroad workers with substantive protection against negligent conduct that is independent

of the employer's obligations under its collective-bargaining agreement, but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board. *It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion. * * * '[T]he Railway Labor Act * * * has no application to a claim for damages to the employee resulting from the negligence of an employer railroad.'*

"* * * * *

*"As far as a worker's right to damages under the FELA is concerned, Congress'[s] enactment of the RLA has had no effect."*

(Footnotes and citations omitted; emphasis supplied.)

In the light of the Supreme Court's discussion in *Buell*, it is clear that defendant is simply incorrect in asserting that the RLA preempts an award of damages to plaintiff for lost wages and emotional distress in his FELA action. The decisions relied upon by defendant for the contrary proposition are distinguishable in that they were decided before the Supreme Court's decision in *Buell, see Lewy*, 799 F2d at 1288 n 6; *Jackson v. Consolidated Rail Corp.*, 717 F2d 1045, 1045 (7th Cir 1983), *cert den* 465 US 1007 (1984); *Beanland v. Chicago, Rock Island & Pacific Railroad Co.*, 480 F2d 109 (8th Cir 1973), or were based on the preemption of nonFELA claims, *see Lewy*, 799 F2d 1281; *Jackson*, 717 F2d at 1045; *Magnuson v. Burlington Northern, Inc.*, 576 F2d 1367 (9th Cir), *cert den* 439 US 930 (1978).

■    Defendant argues that even if plaintiff's claims for lost wages and emotional distress need not be brought under the RLA, they are still not recoverable under the FELA, because those injuries were not caused by defendant's negligence, but instead were solely caused by plaintiff's discharge. Plaintiff does not dispute that his loss of wages and emotional distress were a consequence of his discharge. He argues that they are nevertheless recoverable under the FELA, because there was evidence that the discharge was a direct result of defendant's negligence in causing his injury and that that is a sufficient causal link to permit recovery

under the liberal causation requirement of the FELA. Furthermore, he argues, traditional concepts of tort law, such as proximate cause, do not apply under the FELA. *Oglesby v. Southern Pacific Transp. Co.*, 6 F3d 603, 607 (9th Cir 1993); *Lies v. Farrell Lines, Inc.*, 641 F2d 765, 769-70 (9th Cir 1981).

■ In an action brought under the FELA, "the quantum of evidence sufficient to present a jury question of causation is less than it is in a common law tort action." *Claar v. Burlington Northern R. Co.*, 29 F3d 499, 503 (9th Cir 1994). All that is required is that the jury be able to determine that the "employer['s] negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pacific R. Co.*, 352 US 500, 506, 77 S Ct 443, 1 L Ed 2d 493 (1957). The negligence of the employer need not be either "the sole or whole cause of the injury," nor the "direct or proximate cause" of the injury, *Oglesby*, 6 F3d at 608-09. Rather, FELA plaintiffs need only demonstrate "some causal connection between a defendant's negligence and their injuries." *Claar*, 29 F3d at 503.

In this case, there is evidence that plaintiff was injured in a fall occasioned by defendant's negligence. There also is evidence that defendant terminated plaintiff's employment because of that fall, and that plaintiff suffered lost wages and emotional distress as a result. Thus, there is a direct chain of events from defendant's negligence to plaintiff's damages. There is ample evidence that defendant's negligence played the requisite "slightest part" in producing plaintiff's injuries. We conclude that the trial court did not err in admitting evidence of plaintiff's lost wages and emotional distress.

■ Defendant next assigns error to the trial court's instruction to the jury that a common carrier has a "continuing nondelegable duty and obligation to furnish a reasonably safe place for its employees to work." According to defendant, the trial court's instruction exceeded the scope of plaintiff's pleadings, which alleged only that defendant was negligent in failing to comply with specific administrative rules. Plaintiff responds that, when the instructions are read as a whole, they did not create an erroneous impression in the minds of the jurors that likely affected the outcome of the trial. We agree with plaintiff.

■■ ■■ We review the trial court's instructions

"as a whole, in the context of the entire trial, to determine whether they were 'misleading or * * * inadequate to guide the jury's deliberations.' "

*Lewy*, 799 F2d at 1287 (quoting *United States v. Shorrt Accountancy Corp.*, 785 F2d 1448, 1454 (9th Cir), *cert den* 478 US 1007 (1986)). We may reverse only for an abuse of discretion, giving the trial court "substantial latitude" in tailoring the instructions. *Lewy*, 799 F2d at 1287.

In this case, the trial court's instruction, viewed in isolation, does go beyond the scope of the pleadings, which were limited to plaintiff's allegation that defendant had failed to comply with four specific administrative regulations. However, after making the general statement that a common carrier is obligated to provide a reasonably safe workplace, the trial court proceeded to detail precisely how plaintiff had alleged that defendant had failed to comply with that duty, namely, by failing to comply with the four enumerated regulations. The trial court then read, verbatim, from plaintiff's complaint the specifications of negligence alleged, referring to each of the four regulations. The trial court then instructed the jury to determine whether plaintiff had established, by a preponderance of the evidence, the claims set forth in the pleadings. The trial court then gave the jury a special verdict form, which required the jury to determine whether defendant was "negligent in one or more of the respects claimed in plaintiff's complaint." Given the fact that plaintiff's complaint was predicated solely on defendant's failure to comply with four specific regulations, and given the fact that the trial court's instructions and the special verdict form specifically referred to those pleadings, we cannot say that the trial court's instruction concerning a common carrier's general duty to provide a reasonably safe workplace was misleading or inadequate to guide the jury's deliberations.

■■ ■■ In its third assignment of error, defendant argues that the trial court erred in instructing the jury that it must find that defendant was negligent if it finds that defendant violated any of the specified Oregon administrative rules. According to defendant, the Oregon administrative rules are not the type of regulations on which an FELA claim may be based. In its fourth assignment, defendant argues that the

trial court erred in failing to deliver a requested instruction on contributory negligence. Although defendant concedes that the FELA prohibits the assertion of comparative negligence in cases in which injury was caused by a violation of safety laws, it asserts that the Oregon administrative rules that form the basis for plaintiff's case are not "laws" that have such preclusive effect. Because the two assignments concern the same legal issues, we consider them together. Once again, we review the instructions as a whole to determine whether they were misleading or inadequate. *Lewy*, 799 F2d at 1287.

The FELA provides that

"no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

45 USC § 53. Although that provision refers to violation of a "statute," a related federal law effectively elevates certain administrative rules to the level of a statute for purposes of the FELA. The Federal Railroad Safety Act (FRSA) of 1970 provides:

"[a]ll orders, rules, regulations, standards and requirements in force, or prescribed or issued by the Secretary under this subchapter, or by any State agency which is participating in investigative and surveillance activities [in connection with federal railroad safety standards] shall have the same force and effect as a statute for purposes of the application of sections 53 and 54 of this title, relating to the liability of common carriers by railroad for injuries to their employees."

45 USC § 437(c).[1] In this case, the rules on which plaintiff relies were promulgated by the PUC, which is a state agency participating in the "investigation and surveillance activities" described in the FRSA. No one contests that the PUC is such a participating state agency.[2] Defendant's sole argument is that, under the FRSA, only federal regulations and

---

[1] The provision was repealed after the initiation of these proceedings. Act of July 5, 1994, Pub L 103-272, § 7(b), 108 Stat 1379. That repeal, however, has no effect on "proceedings that were begun before the date of [its] enactment," *id.*, and, thus, has no bearing on our decision.

[2] ORS 760.070 provides:

"(1) The commission shall employ at least three full-time railroad inspectors to assist the commission as the commission may prescribe in:

state regulations relating to investigation and surveillance activities concerning those federal regulations are considered safety "statutes" for FELA purposes.

That, however, is not what the statute says, and the language of the FRSA cannot reasonably be read to obtain the result defendant suggests. The FRSA says that *all* orders, rules, regulations, standards and requirements "prescribed by * * * any State agency which is participating" in certain cooperative enforcement efforts with the federal government shall have the effect of a statute for FELA purposes. 45 USC § 437(c). The statute does not say that only federal regulations have such statutory effect. It specifically includes regulations "prescribed by * * * any State agency." 45 USC § 437(c). Nor does it say that only state rules that relate to investigation and surveillance activities concerning those federal regulations have that effect. The reference to investigation and surveillance activities describes only the type of agency to which the provision applies.[3]

Defendant argues that such a construction of the FRSA is at odds with decisions in which courts have held that the type of state railroad safety regulations at issue in this case are preempted by federal law. *See Missouri Pacific R. Co. v. Railroad Com'n of Texas*, 948 F2d 179, 184 (5th Cir 1991); *Union Pacific R. v. Pub. Util. Com'n of Oregon*, 723 F Supp 526, 529-30 (D Or 1989); *Norfolk and Western Ry. Co. v. Burns*, 587 F Supp 161, 169-71 (ED Mich 1984). Plaintiff responds that the nature of the FRSA's preemption provisions necessitates factual inquiry into the nature and effect of the challenged state regulation, and that defendant made no

---

"* * * * *

"(c) Conducting any investigative, surveillance and enforcement activities that the commission is authorized to conduct under federal law in connection with any federal law, rule, regulation, order or standard relating to railroad safety."

[3] Indeed, defendant's construction of the statute would require us to read the same statutory words to mean two different things at the same time. If defendant correctly reads section 437(c), then "all" railroad safety regulations means "all" in reference to federal regulations, but something substantially less than "all" in reference to state regulations. That construction cannot be reconciled with the statutory language: "All orders * " * prescribed or issued by the Secretary * * * or by any state agency." 45 USC § 437(c).

such record in this case. In any event, plaintiff asserts, other courts have held that state regulations similar to those at issue in this case have not been preempted by the FRSA. *See Southern Pacific Transp. v. Pub. Utilities Com'n*, 647 F Supp 1220 (ND Cal 1986), *aff'd* 820 F2d 1111 (9th Cir 1987); *Ill. Cen. Gulf R. v. Tenn. Pub. Serv.*, 736 SW2d 112, 116 (Tenn App 1987). Defendant offers no reply to those assertions.

■    The FRSA declares that railroad safety regulations "shall be nationally uniform to the extent practicable." 45 USC § 434.[4] The act, however, permits continued state regulation of railroad safety in certain circumstances:

> "A state may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

*Id.* Accordingly, a determination of whether a particular state railroad safety regulation is preempted by the FRSA depends on the nature of the regulation at issue and the factual record concerning its necessity and effect. In that regard, we note that each of the decisions cited by both defendant and plaintiff was based on the factual record before the court as to the necessity and effect of the regulations at issue, and that the different results in those cases simply reflect the different factual records developed in them.

In this case, there is no record at all about the necessity or effect of the regulations on which plaintiff relies. Indeed, aside from the citation to the decisions of other courts, defendant asserts no basis on which we could determine whether the Oregon railroad safety regulations at issue have been preempted by the FRSA.

---

[4] Although that provision has been repealed, it is nevertheless controlling, because these proceedings were begun before that repeal. Act of July 5, 1994, Pub L 103-272, § 7(b), 108 Stat 1379.

We conclude that the Oregon railroad safety regulations on which plaintiff relied are "orders, rules, regulations, standards and requirements" within the meaning of the FRSA. Accordingly, the violation of those rules may give rise to FELA liability and FELA precludes the introduction of a contributory negligence defense. The trial court did not err in so instructing the jury.

Affirmed.